L7gWmooC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              19 Cr. 112 (RMB)

ANDREW MOODY,
    a/k/a "J.R.,"

                Defendant.
                                          Telephone Conference
------------------------------x

                                          New York, N.Y.
                                          July 16, 2021
                                          10:30 a.m.

Before:

                HON. RICHARD M. BERMAN,

                                          District Judge

                       APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  ROBERT B. SOBELMAN
     Assistant United States Attorney


ANTHONY L. RICCO
STEVEN Z. LEGON
     Attorneys for Defendant
```

1       THE COURT:  Good morning, everyone.  This is Judge
2  Berman, and I wanted to speak to you with respect to the
3  sentencing in this matter.  I did cancel the live appearance of
4  Mr. Moody on Tuesday, and I did so because I was concerned --
5  and I am concerned -- about this issue of the new variant and
6  what implications that might have for any of us and anybody
7  else who is involved with a live appearance.  Maybe it's an
8  excess of caution, but from what I'm reading in the papers, I
9  think there is some form of an issue, and I wanted to go over
10 it with all of you.
11      Now, I gather that we don't have the defendant on the
12 phone.  And first off, it is OK for us to have this
13 conversation on the record to be sure.  But in the absence of
14 the defendant, is that OK with defense counsel?
15      MR. RICCO:  Yes, your Honor.  I'm OK with waiving
16 Mr. Moody's appearance because we are really just discussing
17 scheduling and we're discussing scheduling around a matter that
18 Mr. Moody is very sensitive to and is aware of, and I will be
19 meeting with him to discuss our scheduling result soon after
20 this meeting.
21      THE COURT:  I appreciate that.  I was eager to hear
22 your opinions about how to go forward and when.  A couple of
23 issues that come to mind; you may all have discussed this with
24 Christine Murray or with Chelsea.  One issue is who has been
25 vaccinated in our group and who may not have.  I don't know if

L7gWmooC

1    there is anybody who has not been.  I have been vaccinated and
2    my staff has.  Christine has and Chelsea has.  I'm not sure who
3    on the defense team and also on the government team have or
4    have not been vaccinated.
5            Hello?
6            MR. RICCO:  Yes, your Honor.
7            Your Honor, with respect to the defense --
8            THE COURT:  Yes.
9            MR. RICCO:  Your Honor, somebody has some background
10   noise going on.
11           THE COURT:  Yes.  I would ask that people who are not
12   speaking mute their phones temporarily until it's their turn,
13   so to speak, to speak.  But you were saying on behalf of the
14   defense.
15           MR. RICCO:  Yes, your Honor.
16           On behalf of the defense, both Mr. Legon and I have
17   been fully vaccinated.  I did address this issue with Mr. Moody
18   when I was with him yesterday, your Honor, actually, for the
19   first time in many, many months.  And Mr. Moody, your Honor,
20   has not been vaccinated, has not been vaccinated.
21           THE COURT:  Does he plan to be?
22           MR. RICCO:  He had not before our meeting yesterday,
23   but I encouraged him to become vaccinated, so he said he would
24   think about it, and I can always get back to chambers on what
25   his decision was or is.

1     THE COURT: OK. I wasn't aware of that, and I would
2  have and did call off the date just in the excess of caution,
3  but I think this may be problematic for him and for others. I
4  don't know. And I also don't know -- maybe you do,
5  Mr. Ricco -- what protocol he has to, if there is one, in order
6  to be produced physically in person in a courtroom.
7     Do you know what has to happen? First of all, I
8  think, frankly, it would be much easier if he were vaccinated,
9  No. 1, for others and for himself. But second, do you know
10 what kind of protocol the Bureau of Prisons requires to take
11 someone who is unvaccinated and bring them over to the
12 courthouse?
13    MR. RICCO: Judge, I don't generally know the
14 protocol. I do know, your Honor, that it's several days out,
15 if not at least 12 days out, but I will check that specific
16 protocol and I will get back to chambers by way of a letter.
17 I'll file that by way of a letter, and that is the answer to
18 your Honor's first question.
19    THE COURT: That would be helpful. I don't know, by
20 the way, if they require vaccination; that is to say, the BOP.
21 I certainly, to the extent that I can, would like to see
22 everybody in the courtroom. This will be one of the few
23 occasions I've had since the pandemic a live courtroom session.
24 The only one or two others I did have, everybody was
25 vaccinated, so that did provide some degree of security both

1   for the people other than the defendant, but frankly, I think

2   I'd have to conclude that he puts himself at some risk also if

3   he gets transported out into an environment where there are

4   other people.  And from what I'm understanding about this

5   variant, it can be transmitted by people who are vaccinated.

6   So I don't know what his feeling is about exposing

7   himself in that way.  All together, what I'm concerned about is

8   both Mr. Moody and the rest of us and others who may be

9   involved in the transport to and from the prison, to the

10  courthouse.  That's the reason that I have called off the

11  Tuesday sentencing.

12  Now, the second issue, which is related, which I don't

13  think we've discussed in quite some time, is whether or not the

14  defense would be willing to have an appearance for sentencing

15  that is either video or telephone so that in that case he would

16  be produced by the prison to a room where there is a camera

17  and/or a telephone.  I don't know if you've thought of that

18  possibility, or even if you have, whether in light of these

19  what I thought I read as some new circumstances involving

20  variant strains of the Covid, whether he is interested in

21  rethinking whether there needs to be a live sentencing

22  proceeding.

23  Now, I hesitate to say this, and I want to put it on

24  the record.  I know that it is the defendant's prerogative to

25  have a live sentence, so to speak, and we are trying our best

1     to accommodate that.  As a practical matter, from what I recall
2     of the submissions, there is in this case a mandatory minimum
3     sentence of ten years, which I believe the defense has sought
4     as that is the lowest statutory sentence that can be imposed.
5     So where I'm heading with this is that, in many substantial
6     respects, he's not being prejudiced by putting off his
7     sentencing as someone might be if there were no mandatory
8     minimum and someone might be arguing, well, I want time served
9     or something like that.  That doesn't apply, at least it's my
10    understanding that it does not apply to this case because of
11    the statutory mandatory minimum of ten years, and I took that
12    into consideration with respect to Mr. Moody so as not to
13    prejudice his sentencing position.
14             Do you have any thoughts about that, defense counsel,
15    whether he would be amenable to a video or a telephone
16    sentencing?
17             MR. RICCO:  Your Honor, I would first say that I
18    certainly follow your Honor's thought process about this, and
19    it's very similar to my own and very similar to Mr. Moody's,
20    other than the fact that I did not discuss with him the latter
21    part, which is whether he would be willing to waive his
22    appearance in the event that he chooses not to be vaccinated,
23    or if that decision would result in what I would consider a
24    very long delay in the sentencing.
25             THE COURT:  Right.

|   |   |
|---|---|
| 1 | MR. RICCO:  I certainly will take that up with him.  I |
| 2 | know that Mr. Moody wants to be present and would like to be |
| 3 | present, but I've always found him to be very practical.  And I |
| 4 | would say, Judge, that my discussions with Mr. Moody about the |
| 5 | vaccination really discussed his views, because he does have |
| 6 | underlying diabetes.  He's been concerned about the impact of |
| 7 | the vaccination for a person who has diabetes, and so I had |
| 8 | said to him that I would get him information about that if it |
| 9 | would help him make a decision to become vaccinated, because I |
| 10 | had encouraged him to become vaccinated in that he had a |
| 11 | greater risk not being vaccinated with diabetes than he would |
| 12 | with the vaccination. |
| 13 | I agree with your Honor's assessment, and we certainly |
| 14 | would consent and would have no objection to putting |
| 15 | Mr. Moody's sentencing off until maybe sometime in September, |
| 16 | after Labor Day.  That would give us more than enough time to |
| 17 | either -- he would either be vaccinated or we would have enough |
| 18 | time to make an assessment of what the BOP's protocols are for |
| 19 | defendants who are not vaccinated, perhaps a little bit more |
| 20 | information about the variant. |
| 21 | And I would just note, your Honor, that since the |
| 22 | defendant had not been before the Court, that although |
| 23 | Mr. Moody did contract Covid during this time period, he is in |
| 24 | remarkable health right now.  I mean he really looked very, |
| 25 | very good when I met with him.  He looked very good, and of |

1  course, that made me feel good.  So from the defense

2  standpoint, we would consent to and agree to putting the

3  sentence over so we can accomplish all of the concerns that the

4  Court has raised.

5          THE COURT:  Is he aware of the technology is if he

6  were to proceed by videoconferencing?  And let me explain that

7  in two ways.

8          First of all, there have been improvements, in my

9  opinion, with the technology and it has worked rather well.  I

10 think that the BOP delivers the person to a conference room or

11 a nearby room not far from where they're housed regularly, and

12 everybody can see everybody.  And -- and this is an important

13 "and" -- there are occasions either before or during a

14 sentencing when an issue comes up that sometimes the defendant

15 wishes to confer with defense counsel during the proceeding,

16 and we have the technology -- and Chelsea, who would be on the

17 call, knows how to implement, the ability to put, so to speak,

18 Mr. Moody and defense counsel in a private room so that the

19 rest of us cannot hear or participate in while the

20 attorney-client relationship and conversation takes place.

21         And then when that is over, if it happens, defense

22 counsel notifies Chelsea that they're ready to come back and

23 proceed with the sentencing, and that can happen, so that if he

24 were concerned that he couldn't confer with counsel, that

25 concern can be alleviated because we can make it such that he

1   can have consultations with counsel during the course of the
2   proceeding.
3           And let's see.  What else?  I don't know what the
4   medical, if there is such a thing, staff or physician at BOP
5   suggest or if there is a suggestion for defendants who have
6   court appearances who have not been vaccinated and those who
7   have been, now particularly, in the context of this new
8   variant, which seems to be causing some serious problems for
9   people who have not been vaccinated, as I understand it.
10  There's a discussion there that I think needs to happen between
11  defense counsel and Mr. Moody as well as to what the
12  implications are of that.
13          Having said all that, I think all of that needs to be
14  discussed, I'm happy to put the matter over until sometime in
15  September, and we can pick a date in a minute.  And I think you
16  probably know this.  We can pick a date.  Then we get on a
17  list, so to speak, and we're told whether that date is
18  available by the BOP and also by the SDNY committee, which
19  weighs in on whether there can be a production of a defendant.
20  Chances are since it's far enough out, in September, that the
21  day we pick will be honored.  But there's always that
22  possibility that it might not be.
23          Chelsea, is there any restriction to the days of the
24  week?  I'm thinking that we should pick a date in, say, the
25  third week of September.  Would it matter if we picked a

L7gWmooC

1  Monday, Tuesday or a Wednesday, something like that?
2           MS. TABOLT:  If we want him to be produced in person,
3  then the day does not matter.
4           THE COURT:  OK.  What if he wanted to go forward by
5  video?
6           MS. TABOLT:  If you want to do a remote proceeding,
7  then the MDC is producing defendants on Tuesdays and Thursdays
8  only.
9           THE COURT:  Right.  So I guess the safest thing is to
10 pick a Tuesday or a Thursday in the third week in September,
11 and that would still leave the possibility of doing either a
12 remote sentencing or an in-person sentencing.
13          Is that right, Chelsea?
14          MS. TABOLT:  Yes.
15          THE COURT:  Could you propose a date, Chelsea, the
16 third week in September, Tuesday and Thursday.
17          MS. TABOLT:  Yes.  How about Thursday, September 23 at
18 noon?
19          THE COURT:  Defense counsel, does that work for you,
20 9/23 at noon?
21          MR. RICCO:  Actually, that Tuesday would be a better
22 date, your Honor, because we have a sentencing conflict in the
23 Eastern District on that day.  It's a different time, but I
24 don't want to do anything that will rock the apple cart, so to
25 speak.

L7gWmooC

1        THE COURT:  I gotcha.
2        Chelsea, was the 23rd a Thursday?
3        MS. TABOLT:  Yes.  We are fully booked the Tuesday
4   before, but we could do the following Tuesday, the 28th.
5        MR. RICCO:  That would be fine.  Thank you, your
6   Honor.
7        THE COURT:  9/28.  What time, Chelsea?
8        MS. TABOLT:  9:00.
9        THE COURT:  Chelsea, I'm sorry?
10       MS. TABOLT:  9 a.m.
11       THE COURT:  Is that too early?
12       MR. RICCO:  No, your Honor, it's not too early.  That
13  will be fine.
14       THE COURT:  OK.
15       Is that OK with the government as well?
16       MR. SOBELMAN:  Yes, your Honor.
17       THE COURT:  So we're saying September 28, 9 a.m., but
18  as soon as defense counsel can, it would be helpful for us to
19  know Mr. Moody's thinking.
20       And then lastly, I didn't hear from the government
21  counsel if there are any comments you want to add to this
22  adjournment from next Tuesday to September 28 at 9 a.m.
23       MR. SOBELMAN:  No, your Honor.  No substantive
24  comments.  We agree with the Court that in light of the
25  mandatory minimum, it doesn't seem to be an issue to continue

1    the sentencing another time, and we'd defer to the Court and
2    defense counsel about whether it's an in-person proceeding or a
3    remote proceeding.  We have no position on that.
4              THE COURT:  OK.  So there's our date, September 28.
5    I'm glad I got the chance to speak to everybody this morning,
6    and we'll set that date.  We'll put in for that date on
7    whatever list we need to get on, and we'll wait to hear from
8    defense counsel more details as to how Mr. Moody wishes to
9    proceed.  How's that?
10             MR. RICCO:  Your Honor, that would be fine.
11             Judge, just to note, the scheduling at the MDC, for us
12   to go there, is a little different now.  As soon as we get off
13   the phone, we're going to try to get -- we have to schedule it.
14   It's not as simple as we could just go to the jail.  So we'll
15   get a date.  Usually, the date is usually about five days out
16   for us to visit, and we'll try to have a videoconference, but
17   even that's a couple of days off.  So your Honor should be
18   hearing from us I would say before the end of next week --
19             THE COURT:  That's great.
20             MR. RICCO:  -- with respect to the issues that your
21   Honor raised.
22             THE COURT:  That's great. Thanks, everybody, for
23   being so helpful, and I look forward to talking to you going
24   forward.  Thanks so much.  We're adjourned for today.
25             (Adjourned)