LA6AAMOOC                        Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                          19 CR 112 (RMB)
                                             10 CR 1160 (RMB)
5   ANDREW MOODY,

6                     Defendant.

7   ------------------------------x

8                                            New York, N.Y.
                                             October 6, 2021
9                                            9:30 a.m.

10
    Before:
11
                        HON. RICHARD M. BERMAN,
12
                                             District Judge
13

14                          APPEARANCES

15  AUDREY STRAUSS
         Acting United States Attorney for the
16       Southern District of New York
    ROBERT SOBELMAN
17       Assistant United States Attorney

18  ANTHONY RICCO
         Attorney for Defendant Moody
19
    ALSO PRESENT:  DAVINA TUMASAR, USPO
20

21

22

23

24

25

1          (Case called)

2          THE COURT:  I apologize for being late today.

3          So, as you all know, the matter is on for sentencing

4     today for essentially two offenses.  One is the substantive

5     offense which has an exaggerating guideline range, and the

6     other is for violating supervised release by committing that

7     crime during supervision.

8          So, it's a really steep and serious matter.  I want

9     you to also know that I thought that the papers were excellent

10    on both sides and I read everything and I've reviewed the

11    picture and the letters of support and you know, to me it's a

12    sad situation.

13         Mr. Moody, you come across in the papers as being a

14    loving parent and someone who is upbeat, friendly, and so it's

15    sad for me to see this, and just that.  And I was also

16    impressed.  I am going to go in more detail in a minute but I

17    read all of those certificates that you got while incarcerated.

18    I don't think I've ever had a defendant with that much interest

19    in different subjects and was so successful while incarcerated.

20    So, that's all a plus.  I do think that the origin of your

21    issues probably is obvious.  It's a difficult upbringing with

22    both parents having drug problems.  But here we are.

23         Anyway, in sentencing as you all know the United

24    States Sentencing Guidelines are no longer mandatory.  They

25    haven't been for over ten years.  And instead of mandatory

1    guidelines what the Court does at sentencing is to review or

2    recall the 3553(a) factors.  They consist of the nature and the

3    circumstances of the offense or in this case offenses, as well

4    as the history and characteristics of Mr. Moody and they also

5    include the need for sentence imposed to reflect the

6    seriousness of the offense or offenses, to promote respect for

7    the law, to provide just punishment for the offenses, to afford

8    adequate deterrence to criminal conduct, to protect the public

9    from further crimes, to provide the defendant with needed

10   educational or vocational training or medical care or other

11   correctional treatment in the most effective manner.

12        And in doing all that we look at the kinds of

13   sentences available, the kinds of sentences and the sentencing

14   range established in the sentencing guidelines.  Here, there is

15   a mandatory minimum drug charge of 120 months.  I'll get to

16   that in a moment in more detail.

17        We look at any policy statements that may have been

18   issued by the sentencing commission.  We seek to avoid

19   unwarranted sentence disparities among similarly situated

20   defendants, and in appropriate cases I don't think that applies

21   here the need to provide for restitution.

22        Am I right?

23        MR. SOBELMAN:  (Nodding).

24        THE COURT:  So, we always start with a guidelines

25   analysis even though they are no longer mandatory in this case.

1   The range is 360 months to life.  The offense level is 39.  The

2   criminal history category is six and as I say, there is a

3   statutory mandatory minimum sentence of 120 months

4   incarceration.

5          So, when considering the 3553(a) factors, here's what

6   stands out.  And this is going to take a while because I've

7   delved into all, the many factors and then some as I thought

8   were relevant.

9          Mr. Moody pled guilty before Magistrate Judge James

10  Cott on October 29, 2019, to a conspiracy to distribute and

11  possess with the intent to distribute cocaine base, heroin and

12  marijuana.  He pled guilty pursuant to a plea agreement dated

13  July 29, 2019, in which there was a stipulated guidelines range

14  of 360 months to life imprisonment.  I accepted the guilty plea

15  on or about November 12, 2019.

16         I also signed the consent preliminary order of

17  forfeiture on 11/12/2019 in which Mr. Moody agreed to forfeit a

18  sum of money equal to $100,000 in U.S. currency and $34,382 in

19  U.S. currency that was seized from his residence on or about

20  June 22, 2018.

21         Probation describes the principle offense as follows:

22         Mr. Moody led a drug trafficking crew that distributed

23  a significant amount of crack, heroin and fentanyl and

24  marijuana in the Bronx.  More than ten people worked for

25  Mr. Moody and he directed all aspects of the drug operation.

1          This is I'm quoting from the presentence investigation

2     report.

3          So, more than ten people worked for Mr. Moody and he

4     directed all aspects of the drug operation including the roles

5     of his workers, what shift they worked, to whom they sold and

6     how much they charged for the narcotics.

7          Mr. Moody maintained premises to package and

8     distribute the narcotics and he possessed firearms to protect

9     his drug business.  He also earned a substantial amount of

10    money from drug trafficking and often stored cash proceeds in

11    large garbage bags.

12         At the time of his arrest law enforcement officers

13    recovered 280 grams of crack, distribution quantities of heroin

14    and marijuana, $34,382 in cash, a defaced .45 caliber

15    semiautomatic firearm and several drug ledgers.  That's all

16    quoting from the presentence investigation report.

17         Mr. Moody is 36.  He has some high school education.

18    He's unmarried.  He has four children and the children live

19    with their respective mothers.  According to the presentence

20    report, Mr. Moody's father is a recovered drug addict who is a

21    caterer at his family owned restaurant which is called "The

22    House of Seafood Express".

23         Mr. Moody's mother is drug addicted.  Her whereabouts

24    appear to be unknown to Mr. Moody.  He was raised primarily by

25    his grandparents in New Jersey and then in Georgia as a result

1    of his parents' drug addictions.

2              When he was approximately 16 or 17 he spent the summer

3    in New York with his mother and thereafter, stayed and remained

4    in New York.  At that time he went to live with his maternal

5    aunt.  He would periodically see his another in an attempt to

6    get his mother to attend drug treatment.

7              The presentence report also states that Mr. Moody

8    suffers from diabetes, pain in his foot and sometimes

9    difficulty breathing as a result of gunshot wounds he sustained

10   in the past.  He has some prior employment that included

11   working in his family's restaurant, House of Seafood Express,

12   as a cook, working as a delivery person for catering and for

13   the restaurant business and working in the supermarket.

14             He himself has an extensive history of substance abuse

15   according to paragraph 86 of the presentence report.  He began

16   smoking marijuana when he was 14.  At times he smoked up to six

17   or seven marijuana cigarettes per day.  He began using crack

18   cocaine, heroin and ketamine at an early age.  Using and

19   abusing these drugs appeared to begin when he was approximately

20   only 14 years of age.  He has also used Percocet, oxycontin,

21   Xanax, ecstasy and Molly.  He reportedly participated in the

22   drug treatment program at Daytop Village in or about 2016/2017.

23             The probation department says that the instant offense

24   represents his second federal and fifth overall federal

25   construction.  He has a prior criminal history that includes

LA6AAMOOC                    Sentence

criminal sale of a controlled substance in the fifth degree,

unlawful possession of marijuana, criminal possession of a

weapon in the fourth degree, assault in the third degree,

criminal trespass in the second degree, criminal possession of

a controlled substance in the fifth degree -- two convictions

there -- trespass, possession of a firearm in relation to a

drug trafficking offense under Southern District of New York

docket ten CR 1160.

   He was serving a term of supervised release for

possession of a firearm offense under docket 10 CR 1160 at the

time of the instant arrest.  That supervision was by another

Southern District judge.  The case, the supervision case was

reassigned to me on or about 2/28/19.

   Counsel, do you recall who had the supervision, who

was supervising Mr. Moody?

   MR. RICCO:  It was Judge Caproni.

   THE COURT:  Okay.  On 11/12/2019 he pled guilty before

me also to violating the terms of his supervision in that he

committed a federal crime, namely, the narcotics conspiracy.

   He has been detained since June 22, 2018 and, of

course, he will get credit for time-served.

   According to the presentence report, Mr. Moody has not

incurred any discipline, any disciplinary sanctions during his

current incarceration and the presentence report does observe

that between February 2019 and October 2019 he participated in

LA6AAMOOC                        Sentence

1   several life kills and educational classes which I referred to

2   before including parenting skills, conflict resolution,

3   business ethics, marketing, sales fundamentals and leading by

4   example, and also including poetry.

5          By submission dated July 8, 2021, the defense requests

6   a sentence of 120 months.  Defense counsel notes that a

7   sentence of 120 months is double the amount of time that

8   Mr. Moody has ever served in prison and is more than sufficient

9   but not greater than necessary to reach sentencing goals of

10  Congress in this case.

11         This is all now taken from the defense submission.

12         In its determination of an appropriate sentence

13  defense counsel asks the Court to take into consideration the

14  extraordinarily difficult upbringing that Mr. Moody has had as

15  well as the harsh conditions of confinement that he has endured

16  during, particularly, the COVID pandemic.

17         Defense counsel notes that during his confinement the

18  defendant contracted COVID-19 and defense counsel also notes

19  that defendant fears that he is suffering from a post COVID

20  syndrome.

21         Is everybody vaccinated?  Counsel and Mr. Moody I

22  think is as well.

23         MR. RICCO:  Mr. Moody has had his first shot.  He was

24  supposed to get the second today this morning but he will be

25  getting that shot after court today.

1          And, your Honor, at the time of the plea and early in

2     the pleadings, he was not vaccinated.  We had some dialogue

3     back and forth about it.  I shared that with Mr. Moody and he

4     decided to get vaccinated.

5          THE COURT:  According to defense counsel, during the

6     pandemic inmates were locked in their cells for periods of

7     nearly the entire 24 hours of the day and there were months in

8     which all recreation, access to the law library and

9     approximately five weeks ago in-person, it wasn't until

10    approximately five weeks ago that in-person social visits were

11    permitted in the facility.

12         Counsel also describes defendant's family

13    circumstances in detail.  Some of which I referenced already.

14    Most importantly including the fact that his mother was a

15    16-year-old drug addict when she gave birth to Mr. Moody.

16         Defense counsel notes that both of the defendant's

17    parents were addicted and that the defendant's father was gone

18    from his life at an early age.  That is to say Mr. Moody's

19    life.

20         Defense counsel also notes that defendant's

21    grandmother tried to provide a safe, nurturing environment for

22    the defendant to grow up in but these efforts were thwarted by

23    the neighborhoods in which they lived, as well as residing with

24    an abusive step grandfather.

25         Defense counsel acknowledged that the defendant's

1    prior criminal history and he acknowledges the prior criminal

2    history and describes the heartbreaking incident which it is

3    and which defendant was selling drugs and apparently while his

4    mother was waiting in line to purchase drugs, and according to

5    defense counsel did not recognize Mr. Moody as her son.

6          Counsel states that defendant wants the Court to know

7    that Andrew Moody realizes that he has failed but that he is

8    not a failure.  I agree with that.  It's evident from the

9    certificates for example and also from the letters of support

10   that were submitted with Mr. Moody's defense submission.  And

11   that he has not given up, this is according to defense counsel

12   on the great promise that God has blessed him with Andrew Moody

13   is still searching for ways to find a place himself in the life

14   of his children and in society.  Mr. Moody is capable of

15   redemption but he needs help not warehousing in a penitentiary.

16   That's a quote from defense submission.

17          Counsel also states that everyone reports that Andrew

18   Moody is a loving father that is actively involved in the lives

19   of his children, attending PTA meetings, taking an interest in

20   their education and devoting positive time for their

21   nourishment and development.

22          Andrew Moody wants to be a productive member of our

23   society, a father and positive influence in the lives of his

24   children.  And defense counsel states Andrew Moody wants a life

25   for himself, his children and if possible his mother who

1    remains hopelessly addicted to drugs.

2              By submission dated July 12, 2021, defense again

3    requests a sentence of 120 months.  And as I noted before, he

4    has submitted letters of support from defendant's significant

5    other, her daughter and the mother of his two sons.

6              And also included in the submissions are photos of

7    Mr. Moody with friends and family, certificates obtained while

8    in the BOP custody and those certificates include all those

9    that I mentioned before.

10             By submission dated July 13, 2021, the government

11   requests that in case number 19 CR 112 the Court imposed a very

12   substantial sentence above the mandatory minimum of ten years

13   but below the stipulated guideline range of 360 months to life

14   imprisonment.

15             And in case number ten CR 1160, the Court imposed

16   consecutive sentence within the applicable guideline range

17   there of 51 to 63 months of imprisonment.

18             It's likely that the supervised release violation and

19   sentence therefore will be consecutive.  The supervised release

20   period was the opportunity to get the train going on the right

21   track does not seem to have succeeded, obviously.

22             Were there programs, counsel, during the supervised

23   release period?  I'm sure there must have been drug programs

24   and therapy.

25             MR. RICCO:  Yes.  Mr. Moody participated in a drug

LA6AAMOOC                    Sentence

1    treatment program when he was on supervised release.

2                 THE COURT:  Was it Court involved in the supervision?

3                 MR. RICCO:  Yes, sir.

4                 THE COURT:  The governments argues that a very

5    substantial sentence above the mandatory minimum of ten years

6    imprisonment but as I said, below the applicable stipulated

7    guideline range would appropriately reflect the nature and

8    seriousness of the defendant's conduct, provide a just

9    punishment for the offense and deter others who are similarly

10   situated.

11                The defendant was a leader of -- this is from the

12   government's submission -- was a leader of a significant drug

13   operation in the Bronx.  He employed numerous others and sold

14   crack cocaine, heroin and marijuana to long lines of customers

15   nearly 24 hours a day for three years.

16                As reflected in the guidelines calculation, the

17   quantity of drugs sold by the defendant's operation is

18   staggering.  The poison -- this is from the government's

19   submission -- the poison held by the defendant caused harm to

20   untold numbers of residents in the Bronx and he should be held

21   accountable for the damage that he inflicted.

22                Furthermore, according to the government, defendant's

23   possession of a firearm carrying out the substantive offense is

24   deeply troubling.

25                Mr. Moody possessed the firearm which was defaced for

1    the apparent purpose of protecting the drug operation.  The

2    firearm underscores simply how dangerous the drug operation was

3    and that the defendant was prepared to use lethal force against

4    those who might challenge him.

5           The government goes on to state, a sentence within the

6    stipulated guideline range would appropriately deter the

7    defendant from engaging in future criminal conduct and protect

8    the public from further crimes.  The defendant is in criminal

9    history category six.  He has proven himself through his

10   actions to be a dangerous and persistent criminal who is not

11   easily deterred from continuing to engage in serious criminal

12   conduct.  Specifically, his criminal history includes at least

13   one shocking and brazen act of violence.  This goes back some

14   time to on or about January 6, 2006 at approximately 5:28 a.m.

15   the defendant approached another individual with a loaded

16   handgun and shot him three times.  Since that time, defendant

17   has had two federal arrests during which he was found to be in

18   possession of a loaded operable firearm.  Once on September 15,

19   2010 and once on June 22 on 2018.

20          In light of the shooting defendant committed in 2006,

21   it is not difficult to predict according to the government the

22   terrible violence that the defendant was capable of doing to

23   others with firearms.  It is plain that no arrests, conviction

24   or sentence has deterred him from committing serious crimes

25   during the past 15 years of an escalating pattern of crime and

LA6AAMOOC                    Sentence

1    the defendant has proven himself through his actions according

2    to the government to be a dangerous person from whom the public

3    needs to be protected.

4           Now, the supervised release violation is again 10 CR

5    1160.  Under 18 U.S.C. Section 3553(A) (3) (e), the Court may

6    after considering the factors set forth in Section 3553(A) (1)

7    (A) (2) (B) (A) (2) (C) (A) (2) (D) (A) (4) (A) (5) (A) (6) and

8    (A) (7) terminate the term of supervised release, extend the

9    term of supervised release or revoke the term of supervised

10   release.

11          The factors set forth in Section 3553 (A) (1) (A) (2)

12   (B) (A) (2) (C) (A) (2) (D) (A) (4) (A) (5) (A) (6) and (A)

13   (7), include consideration for the nature and the circumstances

14   of the offense, the history and characteristics of Mr. Moody,

15   the need for the sentence imposed to afford an adequate

16   deterrence to criminal conduct, to protect the public from

17   further crimes, to provide the defendant with needed

18   educational or vocational training, medical care or other

19   correctional treatment in the most effective manner.  And we

20   look at the kinds of sentence and the sentencing range

21   established in the sentencing guidelines even though those are

22   no longer mandatory.

23          And with respect to supervised release violations

24   those were always advisory.  The policy statements issued by

25   the sentencing commission, the need to avoid unwarranted

LA6AAMOOC                    Sentence

1    sentence disparities among similarly situated defendants and in

2    appropriate cases, the need to provide for restitution.

3           The Court has to determine that the applicable policy

4    guideline range for the violation specification is 51 to 63

5    months.  And the Court notes also that there's a statutory

6    maximum term of imprisonment of five years.

7           After considering the guidelines and all the other

8    factors in 18 U.S.C. 3583 (E), the Court incorporates its prior

9    discussion by reference and notes the following additional

10   information:

11          And incidentally, it is my intention to revoke the

12   current supervised release term but to apply a new supervised

13   release term at the end of the period of incarceration.

14          I am a big believe in supervised release.  It's

15   appropriate to be heartbroken that it was not more successful

16   in this last go round for Mr. Moody, and I've seen a lot of

17   cases where it has succeeded and so I am not giving up on

18   Mr. Moody by any means.  And I am going to include a term of

19   supervision again after incarceration.

20          According to the presentence report Mr. Moody's

21   adjustment to supervision was deemed poor in that he tested

22   positive for cocaine several times.  He failed to comply with

23   the probation office's random urine testing program.  He

24   attempted to evade drug testing by possessing a Whizzinator

25   device and he sustained several re-arrests including state drug

1   and larceny offenses and the instant federal drug offense.

2           Mr. Moody worked sporadically in the kitchen at a

3   seafood restaurant.  Although he completed an outpatient drug

4   treatment program in June 2016 he relapsed on cocaine and was

5   subsequently referred to intensive outpatient treatment in

6   April of 2017.  He was rearrested before completing treatment.

7           Probation recommends that consecutive sentences be

8   imposed, one for supervised release violation and another for

9   the conspiracy with respect to under lawful drugs.

10          Probation states Mr. Moody has been dealing drugs

11  since he was a teenager.  As evident by the instant conviction

12  Mr. Moody's criminal activity has substantially escalated.  His

13  conduct in this case is serious because he was the leader of a

14  crew for about three years distributing large amounts of hard

15  drugs, made a substantial amount of money and possessed

16  firearms to protect his drug business.

17          Furthermore, it's apparent that he has -- this is

18  according to probation -- no respect for the law, the Court and

19  the probation office as he brazenly ran his drug operation

20  while he was on supervised release.

21          As I previously mentioned, the government requests

22  consecutive sentence with respect to the applicable guidelines

23  range of 51 to 63 months imprisonment on the violation of

24  supervised release.

25          The government argues the defendant has repeatedly and

1    consistently violated the trust placed on him while on Court

2    imposed supervision.  And most importantly, the government

3    contends that the defendant committed the conduct at issue in

4    Count One of the indictment 19 CR 112 while on supervised

5    release in 10 CR 1160, and even before his June 22nd arrest he

6    was had tested positive for cocaine several times, failed to

7    comply with the probation office's random urine collection

8    program and attempted to evade drug testing.

9            He sustained several rearrests including state drug

10   and larceny charges.

11           I've also, as I said, carefully reviewed the

12   presentence investigation report prepared on December 27, 2019,

13   together with the addendum and sentencing recommendation

14   approved on January 17, 2020.  I also received correspondence

15   dated July 8, 2021 and July 12, 2021, from counsel Anthony

16   Ricco and dated July 13, 2021, from AUSA Sobelman.

17           I would ask at this time, defense counsel and

18   Mr. Moody, if they had an opportunity to read and discuss the

19   presentence investigation report along with the addendum and

20   sentencing recommendation therewith?

21           MR. RICCO:  Yes, your Honor.

22           THE COURT:  Mr. Moody, you have been over that

23   presentence report with counsel?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Do either of you have any further

LA6AAMOOC                    Sentence

1   objections to the contents of the report that you want to

2   mention at this time?

3          MR. RICCO:  None other than set forth in the

4   submission.

5          THE COURT:  Mr. Moody, any further objections from

6   you?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  How about from the government?

9          MR. SOBELMAN:  No, your Honor.

10          THE COURT:  I will return the presentence report

11   probation which is our practice and at this time I am ready to

12   hear, and take whatever time you need for defense counsel,

13   Mr. Moody and the government in that order to make any oral

14   presentation they might want.  I'll start with Mr. Ricco.

15          MR. RICCO:  Yes.  Good morning, your Honor.

16          One thing very apparent to me is that your Honor took

17   great care and read the submissions that were filed on behalf

18   of the defendant.

19          THE COURT:  I try to do that all the time but here

20   most especially since the guideline range in both offenses were

21   so high I wanted to make sure that I didn't miss anything

22   because 360 months to life, 51 to 63 months on the violation is

23   a serious business.  So, I did read everything.  I'm sorry.

24          MR. RICCO:  No.  That's fine, your Honor.

25          Actually, your Honor, that was the basis of why the

1   written submission was in the detail that it was.

2          I would like to start with an observation if I can,

3   your Honor.  I've been practicing here in federal courts coming

4   up almost on some four decades.  It's been 35 plus four years.

5   And my work is both noncapital and capital work.  Over the

6   course of my career I have represented people in the Criminal

7   Justice Act in a variety cases, international terrorists to

8   death penalty cases to verdict.  I've represented individuals

9   on death row and I've represented defendants before our courts

10  and every variety of noncapital federal cases.  I have had an

11  opportunity to interact with thousands of defendants over the

12  course of my career.

13         My written submission says that my interactions with

14  Andrew Moody, I found him to be one of the most remarkable

15  young men that I've met in my time as a lawyer practicing law

16  here.  I don't say that lightly.  My initial meeting with

17  Andrew Moody is memorialized in my written submission.  At the

18  time he was telling me about that encounter that he had with

19  his mother was not as a part of any strategy or anything like

20  that.  It was a discussion about who he was.  Who are your

21  parents?  Where are they?  Who is your family?  That

22  circumstance struck me very deeply.

23         Over the course of representing Andrew Moody I have

24  had to interview several of his aunts, several of the women

25  that he's dealt with in his life.  And from those interviews

1    emerged a profile of a human being beyond the charges.  I could

2    sit here for the next hour and talk about Andrew Moody's

3    criminal history and then when I finish having that

4    conversation here is the question.  Why?  When you meet Andrew

5    Moody and you have an opportunity to interact with him and you

6    see the consistency between everyone, it's a very deeply

7    troubling situation that here is a boy, young boy born into

8    this world from drug addicted parents, born with drugs in his

9    system who one day ends up selling drugs to his mother, who

10   doesn't recognize him.  Mr. Moody and I have had the

11   opportunity to talk about just the powerful significance of

12   that.

13           Andrew Moody, judge, I found was a young person.  He's

14   not a person that willfully would violate trusts.  He's not a

15   brazen anything.  I found him to be a survivor of our society

16   and of his circumstance but that's it.  He's not a hero.  He's

17   not an achiever.  He survived.  Andrew Moody is not a person

18   who had -- everything starts with our parents.  Parents teach

19   us our legacy.  Parents inspire us for the future.  Without

20   parenting, there's no legacy.  Without a legacy, there's no

21   progress.

22           Andrew Moody never had a person who went over homework

23   with him.  He never had a person who gave him guidance or gave

24   him an inspiration for the future.  No person ever told him

25   when he was a child that he was smart.  No person ever told him

1    how to dream for a future.  And above all, nobody ever told him

2    that they loved him.  The most important experience that a

3    child has with a parent, or if they're fortunate, a grandparent

4    and grandparents.  Nobody ever cried for Andrew Moody.  I

5    learned that from my discussions with his aunt.  And that as a

6    boy he suffered and wondered where his parents were and why he

7    never saw them.

8            This lack of essential life defining experiences was

9    missing from Andrew in his formative years.  A child growing

10   up -- well, I will say this, judge.  What's worse about the

11   fact that these very important essential life experiences are

12   missing from the life of the child is the environment in which

13   the child was living.  And so Andrew Moody missed these very

14   important life essential experiences not growing up in the

15   suburbs or communities lined with single homes or white picket

16   fences.  No.  He suffered from these lack of life defining

17   experiences, a child growing up in some of the worst forgotten

18   communities in our country, communities then that any person

19   with money or access and who loves their children run to get

20   away from, and make sure that they slam the door behind them.

21           My experience here has been, there's a pattern of the

22   destruction and derailment of the lives of children that we see

23   in these courts every single day.  The narrative though is that

24   they're brazen.  They have no respect for the law.  They can't

25   trust anyone.  And this becomes the narrative upon which these

1   staggering prison sentences are handed down.

2            The circumstances of Andrew's life -- and when I was

3   in law school there was a very famous professor named Alan

4   Dershowitz.  And back in 1994 he coined a phrase and wrote a

5   book called "The Abuse Excuse".  And it's interesting that that

6   book came out around the same time as the 1994 Crime Act.  And

7   in this book Alan Dershowitz said, when you find young people

8   like Andrew Moody, punish them and punish them severely, that

9   all of this talk about what happened to them as children, all

10  of the protections and love and guidance that we give to our

11  own kids, don't pay attention to the fact that Andrew Moody

12  never got that.  That's an excuse.  And the great Harvard

13  professor then was a cheerleader for a phenomenon later known

14  to us as "mass incarceration", just a warehousing of people

15  well beyond the necessary goals of Congress.

16           Andrew Moody has trust.  He just has to learn how to

17  apply it.  I know he has trust, judge, because he put his trust

18  in his lawyer.  He signed a plea agreement, judge, that said he

19  could get 360 years to life consecutive with the violations of

20  supervised release.  And he signed that plea agreement because,

21  one, he wanted to take responsibility for what he had done.

22  But he put faith that someone with would stand up and advocate

23  his cause.  To me that's a powerful sign of redemption.

24  Because the person who we would like to say from our vantage

25  point has no trust, has no faith, has no respect for the law,

1    that's not necessarily accurate.  It all depends on how you

2    define that.

3          I find that Andrew Moody as he is sitting here today

4    does have respect for the law.  He does have respect for a

5    courtroom.  He does have faith now.  To some extent he does

6    have faith in our system.  He certainly placed his faith in his

7    lawyer to have the system hear him.  He knows he has no

8    guaranty.

9          But you know, something happened in those

10   conversations at first the MCC and later the MDC.  And I think

11   the thing that happened that Andrew Moody had an opportunity to

12   sit down and talk to a real person about real life, his life

13   and how he got to where he was and is because he is very much

14   aware of his failure.  He is very much aware of his situation.

15   It's a situation that he does not want but has to find a

16   pathway away from.  It's not an easy task.

17         First and foremost, far too many of the kids who come

18   out of these communities become the victims of it either

19   through criminal activity or death.  Once they're in the system

20   it becomes a revolving door.  My hope is that Andrew has an

21   opportunity to fulfill his promise as a person.

22         Drug dealing is and drugs is the bane of the

23   existence.  I've said it publicly.  I say it every chance I

24   get.  In 1970 a boy who's long forgotten that no one in this

25   room will remember, died from an overdose of heroin.  He was

1    12-years-old.  His name was Walter Vandermere and he died in

2    Harlem, the beginning of the summer at age 12 from drug

3    addiction overdose of heroin.  Later that summer a 15-year-old

4    girl died named Marcia Ricco from an overdose of heroin at age

5    15.  The bane and the problem of drugs in our society has been

6    overwhelming the lives of children, adults, communities, for 50

7    years or more.

8            I recognize and I think Mr. Moody also recognized that

9    people have to be punished for their crimes.  A long time ago

10   ten years was a long time.  In fact, when these drug laws were

11   passed during my career, that ten-year plateau was for the

12   kingpins.  That's what the congressional record says.  It was

13   for the organizers, the leaders.  It was a stiff sentence.  The

14   thought was that this was a sufficient sentence.  But then

15   comes along another generation of people who have a different

16   view and they changed the narrative.  Now the ten years is

17   routine.  Somehow a person gets a break to do ten years in a

18   penitentiary.

19           I think, judge, that everything the government says

20   about Mr. Moody is pretty much true.  But they only know half

21   the story.  The Court is supposed to sentence the individual

22   with consideration for his background and character or lack

23   thereof, not just the one-sided equation.  It's not like who he

24   is is a footnote to let's get down to the business of what he

25   did.  It's all the business of punishment and redemption.  And

1   my view with Andrew which has been extended because of the

2   COVID pandemic, has demonstrated to me that he is a person who

3   is very capable of redemption.

4          Your Honor, the courts never see the meetings with the

5   defendants at the jail, but probable both good and bad.  But

6   when you're positive the courts never get a chance to see that.

7   I think the courts have to rely upon the integrity of the

8   lawyers to accurately talk about without violating the

9   attorney/client privileges where the defendant is.  And I think

10  for Mr. Moody, given everything he sort of demonstrated that he

11  is capable.  He is interested.  He is smart.  He's bright.

12  Judge, he's damaged.

13         I represent a person who is sentenced to 20 years in

14  this courthouse, served a sentence, got out, was back involved

15  with drugs and was back here.  Again, the same lawyer,

16  different judge, same courthouse.  And what we found out is

17  that although he had served the 17 and a half years on a

18  20-year sentence had taken a lot of programs, that something

19  had happened to him when he was a child that had never been

20  addressed.  And what we found out the second time around is

21  that it continued to plague him and influence him and caused

22  him to get back into the use of drugs and slip into the drug

23  world, another defendant who was facing this extraordinary

24  guidelines levels because of the regiment of the sentencing

25  guidelines.

1        So, judge, many of the people in the courtroom today,

2   they're all family or friends of Andrew.  I think one of his

3   aunts is present in the courtroom, and they have seen him since

4   he was a child.  He's always got the back hand from society.

5   He didn't get the back hand from Anthony Ricco and he didn't

6   get the proforma representation, no.  What he got was an

7   opportunity to express himself, to learn about himself, to take

8   responsibility for what he did.

9        And I recognize that we all play different roles here

10  in these proceedings.  I do have appreciation for the

11  government in this case who is open to some of these

12  conversations.  Obviously, the prosecutors -- and they speak

13  for themselves -- but some of these conversations I've had with

14  the government, they have a different view to these issues, but

15  they have a different view.

16       The government, this case was not going to trial,

17  judge.  There's volumes of videotape.  You know this case would

18  have never gone to trial.  If Andrew Moody was required to

19  plead to Count One and Two there's a mandatory minimum of 15

20  years, could have been 15 years.  He certainly faced a far more

21  different situation.  But you know, I think that the parties

22  reached an agreement because both sides get an opportunity to

23  argue while at the same time have a baseline from where people

24  want to start or end their argument.  So, I am grateful for

25  that opportunity.  In some cases it's not provided.

1        So, judge, I have said everything that I wanted to say

2   to the Court.  I did not want to repeat the submission.  I

3   think I might have done that a little bit.  Forgive me for

4   that.

5        But I would say Andrew has a spirit about him that's

6   unbelievable.  And that spirit like his ancestors endures and

7   is present.  Even though he has been through so much, he still

8   is able to rebound.  We punish him because of guns.  We punish

9   him for what he's done.  But the guidelines place no value on

10  his love for his children, his nuanced life, his personality.

11  It's interesting to try to think about where that spirit comes

12  from.  We know where the failure comes from, where his rage

13  comes from.  But where does that strong spirit that he has come

14  from?  And does that spirit have any value?  It doesn't to the

15  sentencing commission, but it does under 3553(a).

16       And so, I did point out, judge, that even at 120

17  months Andrew Moody would be serving twice the prison time that

18  he has ever served in his life, double the prison time.  That's

19  a significant factor.  And we're not saying double the time,

20  one year to two years.  You're talking about the difference

21  between five years and ten years.  And, judge, he is -- I don't

22  know if I mentioned this.  He is 37 now.  He is 37 today.

23  Today is his birthday.

24       I would just end by saying this, judge.  One time a

25  great person talked about the laws of unintended consequences.

1    And one of the unintended consequences of Andrew Moody's arrest

2    in this pandemic is that he has had an opportunity for

3    reflection and he has had an opportunity to demonstrate that he

4    is very interested in his future.  And he has done that.

5           So, in many ways his arrest has helped sort of get the

6    ship right.  Get in the right direction.  In order for him to

7    continue in that direction he is going to need help, just like

8    most of the defendants that come in.  And in the absence of

9    that, judge, chances are he'll be back.  Hopefully, not.  But

10   holding everyone accountable is very important and taking

11   account of where people are and how they got there is a part of

12   accountability and helps us to understand who we see and what

13   needs to be done.  So, I know that the Court will take all of

14   that into consideration.

15           Thank you very much.

16           THE COURT:  Mr. Moody, I'm happy to hear from you.

17           THE DEFENDANT:  Yes, your Honor.  I would like to say

18   I wrote down a few things to express the best way I can.  I

19   would like to say that I take full responsibility for my

20   actions and I want to express how remorseful I am.

21           I would like to say to the best of my ability of my

22   sincere regret and sorrow knowing that my actions have caused

23   so much hurt and pain, as well as my commitment to change.  I

24   am a different man now, your Honor, and this will never happen

25   again.  I am truly sorry for what I've done.

1          Through my incarceration of these last several years I

2     have tried to apprehend the consequences of my actions.  And in

3     the beginning I thought I could understand the full extent of

4     the pain and suffering I have caused.  I've learned through my

5     participation of my rehabilitation programs that it is

6     difficult to fully comprehend the pain that I've inflicted.  I

7     am learning to process these emotions and package them

8     constructively to evolve into a better person.

9          Your Honor, I turn 37 today and I'm scared.  I am

10    scared for my family, Priscilla Davis, my fiance, our children.

11    I'm scared that our children will grow up without their father

12    and the same cycle of difficulty that I grew up with will

13    repeat itself in a vicious cycle.  I am scared for myself of

14    the time that I face without my family and what I have to

15    continue to endure.

16          Your Honor, I have spent much time doing this

17    defensing, reflecting on my life and my commitment to change.

18    As you know, 2020 and 2021 were very hard years because of

19    COVID-19 that forced MCC and MDC into near constant lockdowns.

20    But this time gave me the opportunity to put words to paper.

21    It began to really think critically about the man I want to

22    become.

23          I ask that you believe that I am and continue to be a

24    changed man and I ask you and the victims to forgive me.

25    Please consider my sincere apologies and thank you for allowing

1    me to address you today.

2              I ask for the Court's mercy.

3              THE COURT:  Thank you.

4              Counsel for the government.

5              MR. SOBELMAN:  Your Honor, Mr. Ricco and Mr. Moody

6    were both eloquent today and even moving.  But the reality is

7    that Mr. Moody's actions speak louder than his words today or

8    than Mr. Ricco's words today.  His actions betray the Court's

9    trust.  His actions violated some of the most serious laws we

10   have.  His actions harmed an entire community, dozens, if not

11   hundreds of untold damage done to these individuals, their

12   families.  We don't know what happened to each of them as a

13   result of the use of the enormous quantity of drugs the

14   defendant sold.  But what we do know is that he didn't help

15   make their lives any better and all he did was enrich himself.

16             We don't disagree with Mr. Ricco that Mr. Moody is

17   some type of survivor who has persevered through difficult

18   circumstances.  That much is not in dispute.  But he had

19   multiple opportunities at legitimate employment, employment

20   that would have given him a working wage that he could have

21   lived on, but that's not what he chose to do.  He built his own

22   empire while on supervised release right after getting out of

23   prison for possessing a firearm in furtherance of drug

24   trafficking, the same exact behavior that he started up just

25   after being released from prison.  It's not as if he had years

1    of successful transition that some relapse triggered resorting

2    to his prior behavior.  That's just not how it happened here.

3           The Court and defense counsel both made reference to

4    this being a particularly high-stakes sentencing in that the

5    time that the defendant faces is substantial.  We don't

6    disagree with that.  The one thing I would add is this is also

7    a high-stakes sentencing for the government and the public.

8           The defendant is someone who has shot someone before.

9    After that he possessed a firearm in furtherance of drug

10   trafficking.  After that, he possessed a firearm in furtherance

11   of drug trafficking.  There is a real risk of danger to the

12   communities from this defendant.  The government is as hopeful

13   as anyone that he turns his life around but he has so far shown

14   an inability to do that even after receiving a five-year

15   federal prison sentence.

16          The phenomenon of mass incarceration is something that

17   I think is not appropriate for us to try to take on in the

18   context of a sentencing of an individual defendant.  What I'll

19   note is this.  The writings and scholarship around that issue

20   focus on defendants who are not like this defendant, not

21   defendants who are facing their fifth felony conviction, not

22   defendants who are indisputably violent, not defendants who

23   repeatedly possess firearms and contrary to federal law.  It's

24   a phenomenon that largely describes nonviolent individuals for

25   minor charges.  These are not minor charges.

1          Mr. Ricco at one point referenced well, the ten year

2    mandatory minimum is really supposed to be for organizers and

3    leaders.  That's what Mr. Moody is.  Was he a leader of a

4    Mexican drug cartel?  Of course not.  He had his own mom and

5    pop cartel in the Bronx.  Had he a building he ran it out of on

6    multiple floors, people working in shifts 24 hours a day for

7    years.  He was organized.  He had letters.  He had prices

8    posted on whiteboards on the wall.  He had certain people that

9    focused on cooking the drugs, certain people that focused on

10   packing the drugs, certain people that did the retail

11   transactions to the drug customers who were lined up down the

12   block.  This is a person for whom a ten-year mandatory minimum

13   is appropriate.  And in the government's view, more than that

14   is appropriate here.  We of course agree with the defense that

15   the guidelines here are higher than is necessary under the

16   purposes of sentencing.  We're not asking for 30 years.  We're

17   not asking for life imprisonment.  That is too high.  But ten

18   years is also too low.

19         Mr. Ricco did err on one point because had the

20   defendant gone to trial and lost, he would have been facing a

21   35-year mandatory minimum, not 15, because it would have been

22   his second 924(c) conviction which would have carried a 25-year

23   consecutive of mandatory minimum.  Pleading in the fashion that

24   he did, while appropriate and shows acceptance of

25   responsibility, the government does not view it as an act of

 1    redemption.   It was an act of self interest.   He was offered

 2    the opportunity to have a ten-year mandatory minimum instead of

 3    a 35-year mandatory minimum, which again, the government's view

 4    of 35 for this defendant in these circumstances is too much,

 5    but ten also is too little.

 6            With respect to the violation of supervised release,

 7    the government does think that it's important that whatever

 8    amount your Honor decides is appropriate and the government

 9    suggests the 51 to 60 months is appropriate, but whatever

10    amount your Honor decides is appropriate be imposed

11    consecutively.   And it's really both a matter of principle but

12    also a practical term.

13            As a matter of principle it is a different offense.

14    There's case law that we cite in our letter and also policy

15    statements by the sentencing guidelines sentencing commission

16    that discuss how that punishment is a breach of trust to the

17    Court.   The Court can take into account the underlying offense

18    but by exiting prison and entering on supervised release and

19    immediately returning to the exact same type criminal conduct

20    he did before and in fact escalating that conduct to run his

21    own drug business requires separate publishment as a matter of

22    principle.

23            But as a practical matter at some point this defendant

24    is going to be released again.   It might be ten years from now.

25    It might be 20 years from now.   Your Honor's about to decide

1    that.  But whenever it is, he needs to remember that violating

2    supervised release carries a penalty.  It's not just that he

3    can be arrested for a new crime, prosecuted for a new crime.

4    That may happen also.  But supervised release in a way is

5    sacred.  It is a somewhat clean slate where you are given

6    resources.  You have someone watching over your shoulder to try

7    to set you on the right path.  And the government is deeply

8    concerned that if the message wasn't set last time, it has to

9    be set more loudly and more clearly this time because

10   eventually when Mr. Moody is released it is critical that he

11   stays on the right path.

12        THE COURT:  I think I mentioned before that I was

13   likely to impose consecutive sentences.  There's one other

14   aspect and that is that supervised release is really all the

15   Court knows about how to be of help and how to help someone

16   reintegrate into the community and into society.  And that was

17   the opportunity as far as I can see here and in many other

18   situations.

19        Many defendants do take advantage of supervised

20   release.  I'm not saying, that's not a criticism in the sense

21   that, people do what they've got to do.  But that not,

22   recognizing the assistant is correct that that is the

23   opportunity to perhaps break through old patterns and help

24   begin to resolve old injury.  And he is right.  I mean

25   supervision frankly is the most significant part of a sentence

1   in many respects.  I'm sorry that you were not able to take

2   advantage of the last round of supervised release.  I am not

3   judging you with respect to that.  That's just the fact and I

4   think it's just unfortunate that it didn't happen.  I'm sorry.

5          MR. SOBELMAN:  Your Honor, that actually concludes my

6   comments.  Of course, if the Court has questions, I am happy to

7   answer them.

8          Thank you.

9          THE COURT:  Thank you.

10          I'll tell you this also.  I accept as genuine

11   everybody's comments, Mr. Moody's, Mr. Ricco, as well as the

12   government.  I think what everybody said was sincere, earnest

13   and appropriate.  The question for the Court is what do you do

14   with these contradictory positions?

15          So, I am going to adopt the findings of fact in the

16   presentence report unless defense counsel has any further

17   objections.

18          MR. RICCO:  No further objections.

19          THE COURT:  Or Mr. Moody.

20          THE DEFENDANT:  None, your Honor.

21          THE COURT:  Or the government.

22          MR. SOBELMAN:  None, your Honor.

23          THE COURT:  All right.  So now I am going to impose

24   the sentence.  It's a significant sentence I have to say and

25   then I will actually impose it.  First, I am going to preview

1    what it's going to be.

2              With respect to the substantive crime, the substantive

3    count, the conspiracy, the drug conspiracy, I intend to impose

4    a term of custody at 180 months of incarceration.  The

5    guideline range, as I said before, for that crime is 360 months

6    to life because the offense level is 39 and the criminal

7    history category is six.  So that is actually 180 months less

8    than the guideline range, lower range.

9              And then with respect to the violation of supervised

10   release and docket 10 CR 1160, imposing a further sentence of

11   50 months of incarceration consecutive to the 180 months for

12   the drug conspiracy.  The policy range with respect to the

13   violation of supervision is 51 to 63 months.  And the sentence

14   of 50 months is just somewhat lower than the low end of that

15   range.  Substantially, it's the same as the 50, is similar to

16   the 51 month lower range of the violation.

17             I also intend to reimpose a new sentence of supervised

18   release having revoked the current sentence.  I intend to

19   impose a term of supervision of five years and that is to

20   follow imprisonment for both dockets.  Those five year

21   supervised release for each of the drug conspiracy and for the

22   supervision violations to run concurrently.  So, one five-year

23   term of supervision.  They include these conditions:

24             They include -- the supervision does.  The five years

25   of supervision includes the following mandatory conditions that

LA6AAMOOC                     Sentence

1    Mr. Moody may not, should not commit another federal state or

2    local crime;

3              That he not illegally possess a controlled substance;

4              That he refrain from any unlawful use of controlled

5    substance;

6              That he be required to submit to one drug test within

7    15 days of placement on supervised release and at least two

8    unscheduled drug tests thereafter as may be directed by the

9    probation officer.

10             In addition, he is required to comply with what are

11   called the standard conditions one through 12.  And those

12   include by the way that Mr. Moody must not, shall not own,

13   possess or have access to a firearm, ammunition, destructive

14   device or dangerous weapon, anything that was designed or was

15   modified for the specific purpose of causing bodily injury or

16   death to any person.

17             And then in addition, I am imposing these special

18   conditions which the Court finds are reasonably related to the

19   factors set forth in the 18 U.S.C. Section 3553(A) (is) (A) (2)

20   (B) (A) (2) (C) and (A) (2) (D), and which the Court further

21   finds involve no greater deprivation of liberty and is

22   reasonably necessary for the purposes set forth in Section

23   3553(A) (2) (B) (A) (2) (C) and (A) (2) (D) and that these

24   conditions are consistent with pertinent policy statements

25   issued by the United States Sentencing Commission under 28

LA6AAMOOC                          Sentence

1    U.S.C. Section 994(A).

2           Mr. Moody is to be supervised in his district of

3    residence.  He is required to report to probation within four

4    hours of his release from custody.  Throughout the term of his

5    supervision, the five-year term, he is required to participate

6    in a program approved by the probation office for substance

7    abuse.  That program shall include testing to determine whether

8    he has reverted to use of drugs or alcohol.  The offender may

9    be required to contribute to the cost of services rendered as

10   by a co-payment in an amount to be determined by the probation

11   officer based on such factors as ability to pay or availability

12   of third party payment.

13          In addition, throughout the term of supervised release

14   Mr. Moody is required to participate in weekly therapeutic

15   counseling, both individual and group, once per week at least

16   for each.  To say at least one individual session and one group

17   session therapeutic counseling per week and administered by a

18   licensed therapist.

19          There's also a search condition attached.

20          Mr. Moody shall submit his person, any property,

21   residence, vehicle, papers, computer or other electronic

22   communication data, storage devices, cloud storage for media

23   and effects to any search by a United States probation officer

24   and if needed with the assistance of law enforcement.  The

25   search is to be conducted when there is reasonable suspicion

LA6AAMOOC                    Sentence

1   concerning a violation of the conditions of supervision or

2   unlawful conduct by the person being supervised.  Failure to

3   submit to a search may be grounds for revocation of supervised

4   release.

5        Mr. Moody is required to warn any other occupants of

6   the premises that may be subject to searches pursuant to this

7   condition.  any search shall be conducted in a reasonable and

8   at a unreasonable time and in a reasonable manner.

9        I don't intend to impose a fine.  I don't intend to

10  impose restitution.  I do intend to impose a $100 special

11  assessment which is mandatory for the substantive conspiracy

12  matter 18 U.S.C. 3013.  There's a requirement that the special

13  assessment be mandatory.

14        Briefly, my reasons for the sentence are these:

15        First, I intend as I said before to impose a 180-month

16  sentence on 19 CR 112 and a 50-month sentence on 10 CR 1160.

17        With respect to 19 CR 112 the offense level is 39.

18  The criminal history category is six and the guideline range is

19  36 months to life.  The sentence I imposed there is 180 months

20  which is half the lowest end of the guidelines range.  As I

21  said before, I also intend to impose a sentence of 50 months to

22  run consecutive for the violation of supervised release.  It is

23  my belief that the opportunity for assistance and help comes in

24  supervised release.

25        The specification in this case is a Grade A

LA6AAMOOC                    Sentence

1    specification and the policy guideline range of imprisonment is

2    51 to 63 months of imprisonment.

3          I believe this sentence is appropriate first given the

4    seriousness, the very seriousness of both offenses, both the

5    drug conspiracy and violation of supervision, and the need for

6    deterrence hopefully, specific and general deterrence and the

7    need for punishment.

8          I do recognize that there are other factors, a very

9    positive nature with respect to Mr. Moody as we discussed

10   earlier.

11         I've considered the nature and the circumstances of

12   the crime.  It is, as I say, very serious and poses a danger to

13   the community.  It's obvious.

14         I've also considered the history and characteristics

15   of Mr. Moody with some care.  I understand the background.  I

16   understand perhaps even Mr. Moody.  I hope I do.  And I believe

17   that the sentence imposed reflects the seriousness of the

18   offense, two of them.  It promotes respect for the law.  It

19   provides a just punishment.  It affords I think adequate

20   deterrence and criminal conduct.  It protects the public from

21   further crimes and it provides Mr. Moody with the opportunity

22   for educational and vocational training, medical care and other

23   correctional treatment, most particularly, individual and group

24   therapy and drug treatment.

25         So, before I actually impose the sentence, I am happy

LA6AAMOOC                    Sentence

1   to hear briefly from defense counsel once again, from Mr. Moody

2   and from the government if they want to add anything to what's

3   already been said.

4           Mr. Ricco, anything further?

5           MR. RICCO:  No, your Honor.

6           THE COURT:  Mr. Moody?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  How about the government?

9           MR. SOBELMAN:  No, your Honor.

10          THE COURT:  Okay.  I am going to impose on you

11  Mr. Moody to stand and I will state the sentence.

12          The guideline range for drug conspiracy is 360 months

13  to life.  Under 19 CR 112 and the advisory policy range is for

14  the supervised release violation is 51 to 63 months under 10 CR

15  1160.  Having considered the Sentencing Reform Act of 1984 and

16  United States Sentencing Guidelines and the factors at 18

17  U.S.C. 3553(a), it is my judgment that Andrew Moody be

18  committed to the custody of the Bureau of Prisons to be

19  imprisoned for a term of 180 months on docket 19 CR 112 and 50

20  months on docket 10 CR 1160, to run consecutively.

21          Upon release from incarceration, the defendant shall

22  be placed on a new term of supervised release for five years on

23  each docket to run concurrently.  And those conditions, namely,

24  the mandatory, the standard and special conditions are those

25  that I mentioned for and incorporate here by reference.

1            No fine.  No restitution.  A $100 special assessment

2    which is mandatory and due immediately.

3            As for my reasons for the sentence, I have sentenced

4    below the guideline range with respect to the drug conspiracy,

5    substantially below, and somewhat below with respect to the

6    violation of supervision.  I think that the sentence is

7    appropriate for the reasons I've mentioned already and I

8    incorporated that entire discussion throughout today's

9    proceeding here by reference.  It is largely driven by the

10   seriousness of the offense and the needs for punishment and

11   deterrence and that's just a summary.  I am incorporating as I

12   say all of the remarks pertaining to the factors that one

13   considers.

14           Does either counsel know of any legal reason why the

15   sentence should not be imposed as so stated, starting with

16   defense counsel?

17           MR. RICCO:  No, your Honor, I do not.

18           THE COURT:  How about the government?

19           MR. SOBELMAN:  No, your Honor.

20           THE COURT:  I hereby order that the sentence be

21   imposed as so stated.

22           Mr. Moody, to the extent you have not already waived

23   your appeal rights pursuant to the plea agreement dated

24   July 29, 2019, and here by the way, there are in the plea

25   agreement waivers of the right to appeal the plea agreement

1    dated July 29, 2019 and signed October 29, 2019, under those

2    agreements Mr. Moody has waived his right to file a direct

3    appeal and he's waived the right to bring a collateral

4    challenge -- that's on the two dockets -- including but not

5    limited to an application under 28 U.S.C. Sections 2241 and

6    2255 any sentence that is within or below the stipulated

7    guideline range of 360 months to life imprisonment pursuant to

8    the plea agreement.

9          Mr. Moody has also agreed not no appeal any forfeiture

10   in the amount equal to or less than $100,000.  And I point out

11   there is no plea agreement with regard to 10 CR 1160, the

12   violation of supervised release.

13         To the extent, returning to the drug conspiracy, if

14   there are any rights that apply that I have not thought of or

15   not mentioned because I have not thought of any that are

16   apparent, if there are such rights, then I advise you that you

17   have the right to appeal such rights and for leave to appeal in

18   forma pauperis.  And if you were to request, the clerk of court

19   will prepare a notice of appeal on your behalf immediately.

20         That I think is it pretty much for today.  Are there

21   any open counts that the government was seeking to resolve at

22   this time?

23         MR. SOBELMAN:  Yes, your Honor.  The government moves

24   to dismiss all open counts.

25         THE COURT:  That's true of both the substantive drug

LA6AAMOOC                    Sentence

1   conspiracy and the violation of specifications.

2           MR. SOBELMAN:  Yes, your Honor.

3           THE COURT:  Okay.  I grant that application.

4           And finally, starting with defense counsel, if you

5   wish to add anything to today's proceeding?

6           MR. RICCO:  No, your Honor, I do not.

7           THE COURT:  How about the government?

8           MR. SOBELMAN:  No, your Honor.

9           THE COURT:  All right.  Well, as I said at the outset,

10  it's a sad day for the reasons that we've all discussed.

11  There's nothing left for me to say except, I wish you the best

12  of luck going forward, Mr. Moody.  I really mean that.

13          Counsel, were there any recommendations as to facility

14  in terms of geography or do you want to leave that up to the

15  Bureau of Prisons?

16          MR. RICCO:  Your Honor, I do have two requests.  One,

17  that the defendant be housed in the metropolitan area so he can

18  try to maintain relationship with his children.

19          THE COURT:  I'll grant that request and make that

20  recommendation.

21          MR. RICCO:  The other, your Honor, if Mr. Moody would

22  like to participate in the Bureau of Prisons Challenge Program

23  if he is eligible for it.  So, we would ask that the Court make

24  the recommendation that if he is eligible that he is allowed to

25  participate in the Bureau of Prisons, it's called the Challenge

LA6AAMOOC                         Sentence

1    Program.

2             THE COURT:  Yep.  I'll make that recommendation as

3    well unless anybody has any objection.  No.

4             MR. RICCO:  Thank you.

5             THE COURT:  I should note that we have a

6    representative from the probation department here and anything

7    that you wish to add that we did not cover.

8             PROBATION OFFICER:  No, your Honor.

9             THE COURT:  All right.  Then that concludes our work

10   for today.

11            And I sincerely mean it, Mr. Moody.  I wish you the

12   best of luck going forward.

13            (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25